IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AUSTIN G.,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>　　　　　　Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br><br>Case No. 4:25-cv-00123-PK<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff's appeal from the decision of the Social Security Administration denying his application for disability insurance benefits and supplemental security benefits.[1] For the reasons below, the Court affirms the administrative ruling.

## I.  STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether the "findings are supported by substantial evidence and whether the correct legal standards were applied."[2] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3] The ALJ is required to consider all of the evidence, although the ALJ is not required to discuss all of the evidence.[4] If supported by substantial evidence, the Commissioner's findings are conclusive and must be

---

[1] Docket No. 13, filed January 10, 2026.

[2] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[4] *Id.* at 1009–10.

1

affirmed.[5] The Court must evaluate the record as a whole, including the evidence before the ALJ

that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not

reweigh the evidence or substitute its judgment for that of the Commissioner.[7]

## II.  BACKGROUND

A.    PROCEDURAL HISTORY

On January 11, 2023, Plaintiff applied for disability insurance benefits and supplemental

security income benefits, alleging disability beginning February 15, 2020.[8] The claim was denied

initially on January 10, 2024 and on reconsideration on July 29, 2024.[9] Plaintiff then requested a

hearing before an ALJ,[10] and a telephonic hearing was held on February 18, 2025.[11] On March 7,

2025, the ALJ found that Plaintiff was not disabled.[12] The Appeals Council denied Plaintiff's

request for review on September 15, 2025,[13] making the ALJ's decision the Commissioner's final

decision for purposes of judicial review.[14]

On October 31, 2025, Plaintiff filed his Complaint in this case.[15] On November 3, 2025,

the parties consented to a United States Magistrate Judge conducting all proceedings in the case,

---

[5] *Richardson*, 402 U.S. at 390.

[6] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[7] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[8] R. at 239–241, 245–46.

[9] *Id*. at 127–36, 143–50.

[10] *Id*. at 151–52.

[11] *Id.* at 40–63.

[12] *Id.* at 14–39.

[13] *Id.* at 1–6.

[14] 20 C.F.R. §§ 416.1481, 422.210(a).

[15] Docket No. 1.

including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[16] The Commissioner filed an answer and the administrative record on December 15, 2025.[17]

Plaintiff filed his Opening Brief on January 10, 2026.[18] The Commissioner's Answer Brief was filed on April 7, 2026.[19] Plaintiff filed his Reply Brief on April 13, 2026.[20]

B.    MEDICAL RECORD EVIDENCE

Plaintiff sought disability benefits due to "severe chronic anxiety and PTSD."[21] Plaintiff has a long history of physical and mental health ailments, including torticollis, anxiety and PTSD.[22] Plaintiff has been diagnosed with adjustment disorder, social anxiety disorder, PTSD, unspecified depressive disorder, and generalized anxiety disorder.[23] Plaintiff has reported that medication and treatment have been effective on relieving his torticollis.[24] Additionally, Plaintiff's medical and therapeutic evaluators have indicated that his anxiety has also improved with medication and therapeutic intervention,[25] though, overall, Plaintiff appears to have experienced ups and downs in his anxiety symptoms.[26]

---

[16] Docket Nos. 6, 7.

[17] Docket No. 12.

[18] Docket No. 13.

[19] Docket No. 19.

[20] Docket No. 20.

[21] R. at 241.

[22] *Id.* at 400, 407.

[23] *Id.* at 403, 418, 438, 460.

[24] *Id.* at 401, 405, 407, 409–412.

[25] *Id.* at 413–415, 418–19, 505.

[26] *Id.* at 402, 409, 422, 437, 507–10, 512–15, 521–22, 525, 527, 530.

C.      HEARING TESTIMONY

At the hearing before the ALJ, Plaintiff testified that he dropped out of high school in ninth grade and later obtained his GED.[27] He reported no participation in substantial gainful employment since 2020.[28] Plaintiff explained that he has trouble sleeping due to nightmares and that he frequently and unpredictably has flashbacks, each lasting up to a couple of hours, where he will "zone out and lose track."[29] He testified that he experiences panic attacks that affect his ability to be and remain in public places such as barber shops and grocery stores.[30] Plaintiff stated that his panic attacks have affected his personal hygiene, inhibiting him from regular showering and toileting.[31] He testified that he has difficulties maintaining work for long term jobs because he shows up late to work or will have a panic attack requiring him to leave early.[32] Plaintiff also relayed to the ALJ that he was living out of his car after living with his grandparents rent-free for about two years.[33]

D.      THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that there had been a continuous period since February 2020 where Plaintiff had not engaged in substantial gainful activity.[34] At step two, the ALJ found that

---

[27] *Id.* at 46.

[28] *Id.* at 46–47.

[29] *Id.* at 47–48.

[30] *Id.* at 48, 52.

[31] *Id.* at 49, 52.

[32] *Id.* at 54.

[33] *Id.* at 50.

[34] *Id.* at 20.

Plaintiff suffered from the following severe impairments: social anxiety disorder, post-traumatic stress disorder, unspecified depressive disorder, and generalized anxiety disorder.[35] At step three, the ALJ determined that Plaintiff did not meet or equal a listed impairment.[36] Then, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels," with certain limitations.[37] At step four, the ALJ concluded that Plaintiff had no past relevant work.[38] At step five, the ALJ found that there were jobs that exist in significant numbers that Plaintiff could perform and, therefore, he was not disabled.[39]

## III. DISCUSSION

Plaintiff raises two main issues in his brief: Plaintiff asserts the ALJ did not take Plaintiff's PTSD into consideration when undergoing the RFC analysis,[40] and contends that the ALJ's evaluation of the medical opinions of the Disability Determination Services ("DDS") doctors was in error.[41] The Commissioner argues that the ALJ's evaluation and conclusions regarding Plaintiff's alleged mental impairments and the resulting conclusions were reasonable, that the ALJ's evaluation of the prior administrative medical findings were reasonable, and that the ALJ's findings are supported by substantial evidence in the record.[42]

---

[35] *Id.*

[36] *Id.* at 22.

[37] *Id.* at 25.

[38] *Id.* at 32.

[39] *Id.* at 33–34.

[40] Docket No. 13, at 7.

[41] *Id.* at 8.

[42] Docket No. 19, at 4, 12.

LISTING 12.15 AND WAXING AND WANING SYMPTOMS

Plaintiff asserts that the ALJ failed to properly evaluate whether Plaintiff's severe impairment of PTSD met a listing under 12.15, evidenced by a lacking Paragraph C criteria analysis.[43] Plaintiff also alleges the ALJ failed to consider the waxing and waning nature of Plaintiff's PTSD symptoms which Plaintiff contends is vital to understanding Plaintiff's impairments and his RFC.[44]

At step three, an ALJ must determine "whether a claimant's severe impairments meet or medically equal one of the listed impairments the Commissioner deems sufficiently severe as to preclude substantial gainful activity."[45] "If the claimant's impairment meets or equals a listed impairment, it is conclusively presumed to be disabling and the claimant is entitled to benefits."[46] Additionally at this step, the burden falls on the claimant to show "that his impairment meets or medically equals a listing."[47] "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."[48] "An impairment is 'equivalent' to a listed impairment if there are medical findings 'at least of equal medical significance to the required criteria.'"[49]

---

[43] Docket No. 13, at 2, 7–8.

[44] *Id.*

[45] *N.M.E. v. Kijakazi*, 693 F. Supp. 3d 1119, 1123 (D. Colo. 2023).

[46] *Id.* at 1124.

[47] *Miller v. Saul*, No. 18-cv-01133-RM, 2020 WL 2537511, at * 2 (D. Colo. May 19, 2020) (citing 20 C.F.R. § 404.1520).

[48] *Sullivan v. Zebley*, 439 U.S. 521, 523 (1990).

[49] *Miller*, 2020 WL 2537511, at *2 (quoting 20 C.F.R. § 416.926).

In order to meet a listing under 12.15, the claimant "must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C."[50] At issue here is whether Plaintiff's symptoms meet the criteria set forth by Paragraph C. The 12.15 Paragraph C criteria require medical evidence that establishes a claimant's mental disorder is "serious and persistent" (at least a two-year period where the existence of the disorder is medically documented) and that (1) there are ongoing interventions that diminish the symptoms and signs of the claimant's mental disorder and (2) the claimant has achieved only marginal adjustment.[51]

Marginal adjustment" means that a claimant's "adaptation to daily life is fragile; that is [the claimant has] a minimal capacity to adapt to changes in [their] environment or demands that are not already part" of the claimant's daily life.[52] Marginal adjustment is found when the evidence shows that a change or increased demands have exacerbated a claimant's symptoms and signs, leading to a deterioration in a claimant's functioning.[53] Such a situation may be evidenced by an inability to function outside of the home "or a more restrictive setting" absent "substantial psychosocial supports."[54] Additionally, evidence can show that the deterioration may have required a "significant change in medication or other treatment," or may have required hospitalization or work absences.[55]

---

[50] 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00A.

[51] *Id.*

[52] *Id.* at § 12.00(G)(2)(c).

[53] *Id.*

[54] *Id.*

[55] *Id.*

Plaintiff takes issue with the brevity of the ALJ's overall treatment of the Paragraph C criteria. In response, the Commissioner argues that even if the ALJ's consideration of the Paragraph C criteria was sparse, there is evidence elsewhere in the ALJ's decision and in the record that supports the ALJ's conclusion.[56] Other courts in this circuit have concluded that even if an ALJ's conclusions regarding Paragraph C requirements are lacking, other parts of an ALJ's decision can "show that he relied on substantial evidence in finding that [a plaintiff] did not satisfy [Paragraph C] requirements."[57]

The same is true here: though the ALJ's analysis could have been more robust as to Paragraph C, there is sufficient discussion of the record evidence elsewhere in the ALJ's decision to support the ALJ's conclusion that Plaintiff's conditions did not meet the Paragraph C criteria. For example, the ALJ discussed at length elsewhere in his decision the findings of medical and mental health professionals, as well as Plaintiff's mother's letters and Plaintiff's testimony, and concluded that the "evidence of record fails to show evidence of acute mental distress or decompensation."[58] The record supports that as recently as November 22, 2024, Plaintiff was reporting to his therapist that, though he was anxious at times, he was able to "face some of the fears (such as grocery shopping and spending time with a friend)," and Plaintiff felt "he has a natural ability to be positive and optimistic."[59] And the ALJ did consider, contrary to the Plaintiff's

---

[56] *See* Docket No. 19, at 10.

[57] *N.M.E.*, 693 F. Supp. 3d at 1128; *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) ("[A]n ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment.").

[58] R. at 29–32.

[59] *Id.* at 532.

assertion, the waxing and waning nature of Plaintiff's reported symptoms, but concluded that the reports "do not show mental status examination findings to support marked limitations,"[60] and that there was no evidence in the record that Plaintiff's "anxiety persisted at the level of severity for twelve consecutive months."[61] In sum, discussion elsewhere in the ALJ's decision and evidence in the record[62] supports the ALJ's conclusion—albeit sparse—that Plaintiff does not meet the 12.15 Paragraph C criteria. Having considered this argument, the Court turns to Plaintiff's next issue.

Plaintiff contends that the ALJ's conclusion that Plaintiff's ailments did not amount to marginal adjustment was "inconsistent with the record as a whole."[63] The ALJ explained that the medical evidence in the record did not show that Plaintiff's symptoms equated to achieving only marginal adjustment,[64] namely because Plaintiff was capable of performing a wide range of activities and because no providers had indicated that Plaintiff should be supported by "psychiatric hospitalization" or "a sheltered environment of conservatorship."[65] Plaintiff argues that the ALJ's reliance on these specific psychosocial options as supporting evidence was in error as these situations are not required by the statute to establish Subparagraph C2 criteria, but rather are simply examples of what deterioration in functioning might lead to or look like.[66]

---

[60] *Id.* at 24.

[61] *Id.* at 31.

[62] *Id.* at 402, 409, 422, 437, 507–10, 512–15, 521–22, 525, 527, 530.

[63] Docket No. 13, at 12.

[64] R. at 25.

[65] *Id.*

[66] Docket No. 13, at 11.

The evidence that Plaintiff relies on to rebut the ALJ's findings as to a listing consists of his testimony to the ALJ at the February 2025 hearing[67] and reference to portions of Dr. Tim Kockler's psychological evaluation and LCSW Saskia Stallings' letter, both discussing Plaintiff's anxiety related to social settings as well as his anxiety surrounding his neck spasms.[68] But this highlighted evidence is subjective, largely originating from Plaintiff's self-reporting, and does not include remaining information from both Dr. Kockler and LCSW Stallings that conversely support the conclusion that the ALJ reached. For example, Dr. Kockler's report also indicated that Plaintiff's mental status was normal, that there was no evidence of cognitive dysfunction, and that Plaintiff maintained adequate attention and completed both simple and complex tasks.[69] Likewise, the corresponding treatment notes from LCSW Stallings[70] indicate that Plaintiff would occasionally report that though he was at times struggling in life and with anxiety,[71] he was at other times able to "overcome worry and feels relief with regards to panic."[72] The ALJ discussed both Dr. Kockler's evaluation and LCSW Stalling's letter throughout his decision.[73] The ALJ's discussion of the record as it applies to his consideration of whether Plaintiff met a listing under 12.15 is consistent with what is required of the ALJ at this stage of the analysis, and does not constitute error.

---

[67] *Id.* at 11–12.

[68] *Id.* at 13.

[69] R. at 437.

[70] *Id.* at 448–58

[71] *Id.* at 449–50.

[72] *Id.* at 452.

[73] *Id.* at 20, 22–24.

Additionally, Plaintiff's selective reliance on portions of evidence from the record "invites the court to reweigh the evidence, which is an unavailing tactic on appeal," because the Court "does not reweigh the evidence before the ALJ."[74] In order "to overturn and agency's finding of fact, the court 'must find that the evidence not only supports a contrary conclusion, but compels it.'"[75] The evidence reviewed does not compel a contrary conclusion and therefore this Court cannot substitute its judgment and disturb the ALJ's decision. The Court concludes that, as to this issue, Plaintiff has failed to muster sufficient reason and evidence to show the ALJ erred in his determination that Plaintiff's PTSD did not meet a listing under 12.15.

DDS MEDICAL OPINIONS

Plaintiff next alleges that the ALJ failed to properly evaluate the opinions from DDS doctors Nancy Cohn, PhD, and Mark Dilger, MD.[76] Specifically, Plaintiff claims the ALJ ignored duplicated pages and contradictory opinions and failed to reconcile the different interaction limitations found in the DDS opinions in reaching his RFC findings.[77] In Dr. Cohn's report, she found the Plaintiff had moderate limitations interacting with others, and highlighted the need for

---

[74] *Joseph H. v. Kijakazi*, No. 2 :22-cv-00188-JCB, 2022 WL 7106243, at * 3 (D. Utah Oct. 12, 2022).

[75] *Valerie Lea M. v. Bisignano*, No. 25-2224-JWL, 2026 WL 1162049, at *1 (D. Kan. Apr. 29, 2026) (quoting *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481, n.1 (1992)) (emphasis omitted); *see also Danner v. Bisignano*, No. 4:25-CV-285, 2026 WL 657746, at * 18 (M.D. Pa. Mar. 9, 2026) ("[A]ny evaluation of an administrative agency disability determination must also take into account the fundamental principle that: 'No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.'") (quoting *Moua v. Colvin*, 541 F. App'x 794, 798 (10th Cir. 2013)).

[76] Docket No. 13, at 14.

[77] *Id.* at 8.

Plaintiff to have limited exposure to the public and infrequent interaction with peers and supervisors.[78] Likewise, Dr. Dilger found that Plaintiff had moderate limitations in interacting with others.[79] The ALJ found these DDS opinions "somewhat persuasive."[80]

For applications filed on or after March 27, 2017, an ALJ is not required to defer to or give any specific weight to medical opinions or prior administrative medical findings.[81] Rather, the ALJ considers them using the criteria in 20 C.F.R. § 404.1520c(c): (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. The most important criteria for determining persuasiveness are the supportability and consistency.[82] "For supportability, the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase."[83] "Consistency, on the other hand, is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."[84]

The ALJ must articulate "how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record."[85] The ALJ must explain

---

[78] R. at 75–76.

[79] *Id.* at 104–105.

[80] *Id.* at 25–26.

[81] 20 C.F.R. § 404.1520c(a).

[82] *Id.* § 404.1520c(a), (b)(2).

[83] *John H. v. Saul*, No. 2:20-CV-00255-JCB, 2021 WL 872320, at *4 (D. Utah Mar. 8, 2021) (internal quotation marks and citation omitted).

[84] *Id.*

[85] 20 C.F.R. § 404.1520c(b).

how he or she considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings, but is generally not required to explain how he or she considered other factors.[86] Social Security Ruling 96-8p emphasizes that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."[87] "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."[88]

At the outset, the Court addresses the duplicate-page issue raised by Plaintiff. Plaintiff explains that the ALJ did not mention the duplicated pages in Dr. Cohn's report and assumed that because of this, the ALJ maybe did not even notice the duplication.[89] Plaintiff contends that the ALJ's failure to mention the pages makes it unclear "how he took these inconsistent pages into account when finding the opinion somewhat persuasive."[90] However, the record shows Dr. Cohn's "duplicated" pages are evaluations of different time periods, one for the time frame between January 11, 2023, to the time of the evaluation, January 5, 2024,[91] and the other for the time of Plaintiff's last insured date of March 31, 2020.[92] But this "duplication" is of no consequence, and

---

[86] *Id*. § 404.1520c(b)(2).

[87] SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

[88] *Id.*; *see also Givens v. Astrue*, 251 F. App'x 561, 568 (10th Cir. 2007) ("If the ALJ rejects any significantly probative medical evidence concerning [a claimant's] RFC, he must provide adequate reasons for his decision to reject that evidence.").

[89] Docket No. 13, at 16.

[90] *Id.*

[91] R. at 90–91.

[92] *Id.* at 92.

the ALJ did not err in omitting any mention of the similarities in the reports. The crux of the issue before the court is, rather, whether the ALJ correctly considered the DDS opinions as to Plaintiff's limitations surrounding the interactions with co-workers and supervisors in reaching a decision on Plaintiff's RFC. Stated another way, the question is whether the ALJ appropriately explained why he reached a lesser limitation than the DDS doctors.

Turning to this next issue, Plaintiff faults the ALJ for allegedly cherry-picking certain portions of the DDS opinions in support of his conclusions that are consistent with the RFC the ALJ assigned to Plaintiff.[93] Plaintiff further faults the ALJ's conclusion that Plaintiff's ability to interact with previous medical providers on a one-on-one basis for a short period of time supports the finding of frequent interactions with co-workers and supervisors, highlighting that evidence contained elsewhere in the record shows Plaintiff had struggled with some providers and exhibited anxious affect.[94]

The ALJ noted in his decision that the findings in the DDS opinions were somewhat persuasive as to the findings regarding the interactions limitations and that the findings were somewhat supported by citations to the record and somewhat consistent with the evidence in the record.[95] Namely, the ALJ explained that "while some limitations interactions [sic] with others are supported," other evidence in the record led the ALJ to find that Plaintiff could instead have frequent interactions with supervisors and coworkers.[96] The ALJ explained that his finding was

---

[93] Docket No. 13, at 15.

[94] *Id.* at 18.

[95] R. at 25–26.

[96] *Id.* at 26.

"supported by the claimant's good ability to interact during the psychological consultative evaluation and in the records from St. George Children and Family Psychiatric."[97]

Although the ALJ admittedly could have gone into more depth in his explanation as to why he found a lesser limitation, a complete review of the ALJ's decision supports the fact that the ALJ engaged in the necessary analysis.[98] Elsewhere in the ALJ's opinion, the ALJ discussed in greater detail the evidence from St. George Children and Family Psychiatric and the reports of the psychiatric consultation evaluations.[99] Review of these records supports that Plaintiff, though reportedly anxious for some of the interactions, had logical and well-organized thinking and was appropriately responsive to providers despite his anxious disposition.[100] It is reasonable that the ALJ could conclude that these abilities would permit Plaintiff to have more frequent interaction with peers and supervisors than what the DDS opinions indicate.

Here, Plaintiff's contentions, again, essentially ask the Court to reweigh evidence, which it cannot do. "The possibility of drawing two inconsistent conclusions from the evidence does not

---

[97] *Id.*

[98] So long as the court can "trace the path of the adjudicator's reasoning," the ALJ has met the articulation requirements. *Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *5 (10th Cir. Oct. 28, 2022) (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017)). Plaintiff further contends that the ALJ's decision generally refers to medical evidence as a whole instead of noting page numbers. However, the evidence the ALJ cites in this particular portion of the decision were referenced earlier in the ALJ's decision and thus had already been considered and highlighted. *See* R. at 22–24. Therefore, this argument is without merit. *See Bryan T. v. Dudek*, 799 F. Supp. 3d 943, 952 (N.D. Cal. Sept. 8, 2025) (explaining that "[w]hile more extensive use of pin citations might have been helpful, the ALJ's citations are sufficiently specific to allow this Court to review her reasoning").

[99] R. at 23–24.

[100] *Id.* at 402–03, 436–37, 463–64, 474–75.

prevent an administrative agency's findings from being supported by substantial evidence."[101] Plaintiff fails to show error in the ALJ's conclusions, and the record reveals that the ALJ considered all of the evidence, even if every piece was not discussed or discussed in depth at this particular stage of the ALJ's rationale. The Court concludes that the ALJ's findings as to the interactions with other limitation RFC finding is supported by substantial evidence and the ALJ therefore did not err. For this reason, the ALJ's conclusions as to this issue will not be disturbed, and the decision is affirmed.

### IV.  CONCLUSION

Having made a thorough review of the entire record, the Court affirms the Commissioner's decision.

DATED this 21st day of July, 2026.

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge

---

[101] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).